**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph A. MASINO, Defendant-Appellant.**

**No. 124, Docket 25419.**

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1959.

Decided Feb. 18, 1960.

130

John P. MacArthur, Asst. U. S. Atty., Western District of New York, Buffalo, N. Y. (Neil R. Farmelo, Acting U. S. Atty., Buffalo, N. Y., on the brief), for plaintiff-appellee.

William B. Mahoney, Buffalo, N. Y., for defendant-appellant.

Before LUMBARD, Chief Judge, and SWAN and MAGRUDER,* Circuit Judges.

LUMBARD, Chief Judge.

Masino appeals from his conviction on two counts for having dispensed and distributed four capsules of heroin, not in nor obtained from an original stamped package as required by law, in violation

---

* Judge CALVERT MAGRUDER of the First Circuit, sitting by designation.

of 26 U.S.C. § 4704(a), and for receiving four capsules of heroin, knowing the same to have been imported contrary to law in violation of 21 U.S.C.A. § 174. He was sentenced to two years imprisonment and fined $200 on the first count, and to five years imprisonment and fined $200 on the second count; the fine on the second count was remitted, both sentences were suspended and he was placed on probation for concurrent periods of two and five years.

Masino contends that the court erred in restricting the cross-examination of the two principal government witnesses, Brown and Beville, in allowing the admission of improper rebuttal testimony, and in refusing to charge as requested. We agree and find that the errors taken together were so substantial as to require reversal of the conviction.

The case against Masino turned on whether or not Masino on the evening of November 24, 1955 received six capsules of heroin from Beville and delivered four of them to Brown. By the testimony of Brown (a special employee of the government), Beville (Masino's accomplice), and Newman (a treasury agent), the government sought to establish that Brown had telephoned Masino and informed him that he had $25 available for the purchase of narcotics. Brown obtained this amount from Newman and gave it to Beville. Subsequently Beville and Masino met at a designated place and drove away together in Masino's car. They parked and Beville left the car to get the narcotics while Masino waited. Five or ten minutes later Beville returned with eight capsules; he gave Masino six, kept two himself, drove back to Brown's car and gave Brown $5 change. When Masino's car came alongside Brown's car,

Masino told Brown to roll down his window and when he did so Masino threw in a packet containing four capsules. Masino then suggested to Brown that they go to Brown's home and use the narcotics there, but Brown rejected this. The capsules were later turned over to Newman and upon examination were found to contain heroin.

Masino, while admitting his meeting with Beville and their purpose to secure narcotics, testified that when Beville returned to the car he reported that he had been unable to obtain narcotics as "the man was out." Masino denied receiving any narcotics, throwing anything into Brown's car, or asking to go over to Brown's home. Thus, except for minor details corroborated by narcotic agent Newman, the government's case depended on the testimony of Beville and Brown.

*Cross-examination of Brown*

■ Brown, on cross-examination, admitted having been an addict and using an eye dropper and hypodermic needle, but claimed that he had stopped using heroin in "October or maybe the end of September," 1955, after being a user for eight months. He also admitted coming into possession of fifty or more capsules of heroin in November, 1955.

The defense sought to show that Brown had an eye dropper and hypodermic needle in his possession after November 24, 1955. The defense also offered to prove that Brown had been arrested on November 25, 1955 on a charge of possessing a syringe and hypodermic needle, and that the proceedings against Brown in the City Court of Buffalo had been dismissed at the urging of the same Assistant United States Attorney who was prosecuting Masino.[1]

---

1. The relevant portion of the offer of proof as to Brown was as follows:

"I wish to show in this particular case, your Honor, that this man had these instruments in his possession and that he was apprehended by the Buffalo police, that he was charged with violating the Penal Law of the State of New York for having instruments in his possession that are peculiarly applicable to the injection of narcotics, and I am going to show in this particular case Mr. .............. [Assistant United States Attorney] appeared as his counsel in the City Court of Buffalo and from the records of the City Court of Buffalo, I am going to show * * * they * * * had that charge against this man dismissed. * * *" (Name of attorney omitted.)

However, the trial judge sustained the government's objection to this line of questioning, curtailed the cross-examination of Brown and excluded both the proffered evidence regarding the charge against Brown and the disposition of that charge by the Buffalo court.[2]

 The testimony sought from Brown was clearly relevant to his motives for testifying as a government witness and as such should have been admitted. When a witness in a criminal case is being questioned as to his possible motives for testifying falsely wide latitude should be allowed in cross-examination. Cross-examination is proper when its purpose is to reveal bias or interest on the part of the witness being examined. United States v. Lester, 2 Cir., 1957, 248 F.2d 329, 334–35. Brown, who admitted having been an addict, was arrested by the Buffalo police for possessing an eye dropper and hypodermic syringe at a time when he said he was no longer a user. It was highly relevant and material to bring out that the state court charge for possessing such instruments for the administering of narcotics had been quashed upon the intercession of the Assistant United States Attorney as was claimed by the defense and not denied by the government. This is the kind of situation where the widest possible cross-examination should be permitted. The appellant was entitled to have the jury know what had happened with respect to the charge, including any part which representatives of the government had played, so that the jury could draw its own conclusions with respect to possible motives for Brown's testimony. It was substantial error for the trial judge to restrict this line of cross-examination.

### Cross-examination of Beville

 The defense sought to cross-examine Beville regarding a three count indictment relating to a sale of narcotics in November, 1955. On direct examination the government had brought out that Beville had been indicted in November 1955 for his participation in the transaction involving Masino, that he pleaded guilty and was on probation. The record indicates that Beville had pleaded guilty to count 3 which related to the events of November 24 and that two other counts relating to a sale of narcotics on November 22 had been dismissed. When the defense sought to develop whether Beville had been indicted for the sale of narcotics on November 22 and whether Beville sold four capsules on November 22, 1955, the government's objections to these questions were sustained. Counsel argued that the disposition of the other two counts of the indictment bore on the reasons and motives which the witness might have in testifying for the government.[3]

As in the case of Brown it was relevant for the defense to develop any facts bearing upon Beville's possible motives to falsify his testimony. All the facts regarding the indictment against him and the disposition of the other two counts were pertinent so that the jury could pass judgment on Beville's motives and their effect on the truthfulness of his testimony. United States v. Lester, supra.

Whether or not the government had brought out on Beville's direct examination his plea to one count of the indictment, the indictment and its disposition was a matter so intimately related to Beville's possible motives to falsify and his relationship to the government which

2. Appellant was only allowed to ask whether "on that particular day, the 25th of November, 1955, did you have an eyedropper and a hypodermic needle in your possession?" The answer was "Yes."

3. The relevant portion of the offer of proof as to Beville was as follows:
 "I am attempting at this particular time to put before the Court and jury the entire indictment that was returned against the man and eventually show from the record of this Court the disposition that was made of it, as to motivation, the reason this man would have in testifying on behalf of the Government in this particular case."

had called him as its witness that the trial court should have allowed full exploration of these matters on cross-examination.

■ Indeed, where the principal witnesses appearing in behalf of the prosecution have a criminal record or have engaged in illegal practices and are accomplices to the crime charged, it is essential to a fair trial that the court allow the defendant to cross-examine such witnesses as widely as the rules of evidence permit. Montgomery v. United States, 5 Cir., 1953, 203 F.2d 887.

### Rebuttal testimony of Beville

■ Masino testified on his own behalf and on cross-examination he was asked by the prosecution whether he had ever obtained drugs for Brown or Beville on other occasions. He replied that he had not. He later stated that he had no source from which he could buy narcotics. Beville was subsequently called by the prosecution in rebuttal and testified, over objection, to the effect that Masino used narcotics "two or three times a week" at Beville's home and had on occasions purchased narcotics and supplied them to other persons.

■ It was prejudicial error for the court to admit this rebuttal testimony since it went far beyond the permissible bounds of attacking a witness' credibility. When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such answer. United States v. Sweeney, 3 Cir., 1959, 262 F.2d 272, 276–277.

■■ Nor is there any merit to the government's contention that the rebuttal testimony was proper because Masino had put his character in issue. A short answer to this is that the rebuttal testimony was not with reference to character or reputation as it had to do only with specific acts. Moreover, the character of a defendant is put in issue only when he calls witnesses to attest to his reputation, as we have held in United States v. Tomaiolo, 2 Cir., 1957, 249 F.2d 683, 689. Here no witness was called to testify to Masino's reputation. Nor did Masino's testimony as to his service with the armed forces and the introduction of his honorable discharge put his character in issue, as this was nothing more than what a defendant is permitted to say about himself by way of introduction. See United States v. Tomaiolo, supra, 249 F.2d at page 692.

### The charge of the Court

■ The court was requested to charge that Beville was an accomplice and as such his testimony should be "carefully scrutinized," and that Brown was a paid informer whose testimony "must be examined with greater scrutiny than the testimony of an ordinary witness." Both of these requests were refused, and exceptions duly taken. We are of the opinion that a charge on this subject should have been given. Cratty v. United States, 1947, 82 U.S.App.D.C. 236, 163 F.2d 844, 850; United States v. Wilson, 2 Cir., 154 F.2d 802, 805, judgment vacated and remanded 1946, 328 U.S. 823, 66 S.Ct. 1363, 90 L.Ed. 1603; United States v. Becker, 2 Cir., 1933, 62 F.2d 1007, 1009. Whether a failure so to charge is error or not depends on the other circumstances of the case. But here the government's case depended on Brown and Beville almost entirely and therefore it was error not to instruct the jury substantially as counsel requested, namely that such testimony should be scrutinized with special care. Fletcher v. United States, 1946, 81 U.S.App.D.C. 306, 158 F.2d 321, 322.

The errors in the exclusion and the admission of evidence and in the failure of the court to charge as requested were all substantial. We do not decide that any one of these errors by itself would require reversal, but we do hold that taken together these errors were such that there can be no doubt that Masino was not accorded the fair trial to which he was entitled.

The conviction is reversed.