UNITED STATES of America,
Appellee,

v.

Irving SMALLS, Appellant.

No. 458, Docket 29860.

United States Court of Appeals
Second Circuit.

Argued June 23, 1966.

Decided July 13, 1966.

Sherman J. Saxl, New York City (Jackson, Nash, Brophy, Barringer & Brooks, New York City, on the brief), for appellant.

Michael W. Mitchell, New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, John E. Sprizzo, New York City, on the brief), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Irving Small[1] appeals from a judgment of conviction on two counts in the the United States District Court for the Southern District of New York for violating the federal narcotics laws, 21 U.S.C. §§ 173, 174. The trial was held before Judge Frederick van Pelt Bryan sitting without a jury. Small raises four points on appeal: (1) lack of a speedy trial; (2) failure of the government to sustain its burden of proof on entrapment; (3) application by the trial judge of an improper standard for burden of proof; and (4) violation by the government of basic standards of fairness by use of an informer.

Viewing the evidence in the light most favorable to the government, as we must after a conviction, the following are the relevant facts: On June 19, 1963, John T. Coursey, a narcotics agent, was introduced to appellant by an informer. The meeting took place in a government automobile. Small stated to Coursey, "I hear you want to purchase some stuff," to which the agent replied, "That's right. What can you do for me?" Small then indicated the amount (½ oz.) of heroin that he could supply and its price ($240). After agreement was reached, Small told Coursey to drive to an area where he left the automobile (under surveillance by another agent), entered a building, remained inside for about five minutes, and then rejoined Agent Coursey and the informer in the car. Small then handed Coursey an envelope containing heroin, and Coursey paid appellant $240, but complained about the weight of the narcotics. Small agreed that perhaps the weight was short but claimed that "it's just like I got it from my people"; he

finally agreed to give Coursey the additional amount of heroin later. On June 28, 1963, the two met again, this time without the informer, although the latter arranged the meeting. Appellant told Coursey he was sorry that Coursey had been "short-weighted" before, handed him an envelope containing heroin, and stated it was owed Coursey from the previous purchase. No further money was paid at this time. The two then had a drink and while talking together, appellant stated that he was "interested in having * * * [Coursey] as a customer," assured Coursey that the mix-up was a rarity, and said that "he was connected with some good people."

This version of the facts differs considerably from that presented by defendant, who took the stand. Small testified that he had known the informer for twenty-five years (so well, in fact, that the informer's mother helped raise Small) and that he met Agent Coursey at the informer's instigation at a time when Small had recently been released from prison and was penniless. According to Small, the informer promised him $50 if he would meet someone, and later that evening Small met Coursey through arrangements made by the informer. Small pretended he could obtain narcotics after receiving a wink from the informer, and he and the informer left the car together where the informer gave Small a package. Small gave the package to Coursey, Coursey handed over money, and Small gave the money to the informer. Thereafter, the informer gave Small $50. The June 28 meeting came about because the informer persuaded Small to deliver a package for him to Coursey, for which Small was paid $30. In support of the defense of entrapment in the trial court, testimony was also elicited from the informer that he was a drug addict, he received payments from the Bureau of Narcotics, and had made cases for the government against others, including his sister's "boy friend."

---

1. Although indicted as Irving Smalls, defendant's correct name is Small.

■ Although these events took place late in June 1963, appellant was not indicted until February 1965, and was not tried until June 1965. Because of this delay, Small claims deprivation of his right to a speedy trial under the Sixth Amendment. In United States v. Sanchez, 361 F.2d 824 (2d Cir. 1966) (*per curiam*), we stated that the right to a speedy trial after indictment is deemed waived unless promptly asserted, United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963); United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), and once a defendant has been charged, he is under a like obligation to give prompt notice of prejudice claimed as a result of pre-arrest delay, D'Ercole v. United States, 361 F.2d 211 (2d Cir. 1966) (*per curiam*). Since the claim of lack of speedy trial was not made by Small prior to or at trial, the point will not be considered further here.

■ The claimed errors on the entrapment issue are also without merit. This court has recently examined with some care the elements of the entrapment defense in United States v. Riley, 363 F.2d 955 (2d Cir. 1966). That case quoted with approval the analysis of Judge Learned Hand in United States v. Sherman, 200 F.2d 880, 882–883 (2d Cir. 1952), that entrapment presented two issues: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." We assume, under the view of the majority in United States v. Riley, supra, government initiation of the crime; appellant argues that the government did not sufficiently prove appellant's propensity to commit it. However, on this issue there was more than enough evidence for Judge Bryan, as the trier of fact, to find propensity and, therefore, no entrapment. E. g., according to Agent Coursey, Small told Coursey he was interested in having Coursey as a customer and he was connected with good people. Of course, Small contradicted the testimony of the agents on key issues, but the question was one of credibility which has been resolved against appellant.

■ Appellant also argues that the trial court improperly placed upon appellant the burden of disproving propensity, rather than requiring the government to prove propensity. After hearing all the evidence and final argument, the judge took a recess. Upon his return, he stated:

I have given consideration to the evidence in this case. I find that the defendant has not sustained the defense of entrapment, and that the government has proven the defendant guilty beyond a reasonable doubt. And I find the defendant guilty on both counts.

Undoubtedly, a more felicitous phrasing could have been used, distinguishing the elements of entrapment and the difference in burden as to each. Yet it is quite clear, as it was in United States v. Jones, 360 F.2d 92, 96–97 (2d Cir. 1966), where the judge made a similar oral statement, that the trier of fact, having heard the evidence, believed that the government had met its burden of proving defendant guilty beyond a reasonable doubt.

■ Finally, appellant claims that the government's conduct in this case in promoting the commission of the crime so violated established standards of fairness that the trial judge should have directed acquittal as a matter of law. This argument appears to be a plea to redefine entrapment in the terms originally suggested in the concurring opinions (but not accepted by the majority) in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), as speaking only to the conduct of the police.[2] We are, of course, bound by *Sor-*

2. See A.L.I. Model Penal Code § 2.13(1) (Proposed Official Draft 1962).

*rells* and *Sherman.* However, it is true that there have been suggestions in some cases since *Sorrells* and *Sherman* that where the actions of the government "shock the conscience of the court" a conviction cannot be allowed. See United States v. Morrison, 348 F.2d 1003 (2d Cir.), cert. denied, 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158 (1965); Whiting v. United States, 321 F.2d 72, 76 (1st Cir.), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963); Williamson v. United States, 311 F.2d 441 (5th Cir. 1962); Acardi v. United States, 257 F.2d 168, 172–173, (5th Cir.), cert. denied, 358 U.S. 883, 900, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958); United States v. Ramsey, 220 F.Supp. 86 (E.D.Tenn.1963). Similarly, in Lopez v. United States, 373 U.S. 427, 444, 83 S.Ct. 1381, 1390, 10 L.Ed.2d 462 (1963), Chief Justice Warren's concurring opinion noted, in an analogous situation, that:

> This Court has not yet established the limits within which the police may use an informer to appeal to friendship and camaraderie-in-crime to induce admissions from a suspect, but suffice it to say here, the issue is substantial. We have already struck down the use of psychological pressures and appeals to friendship to induce admissions or confessions under not totally dissimilar circumstances.

However, only in *Williamson,* supra, was a conviction set aside because of entrapment through use of an informer.[3] In that case, the evidence was clear that the government agents offered "a specific sum of money to convict a specified suspect," conduct there characterized as "really more than civilized sensibilities can stand."[4] In this case, the evidence is ambiguous, but it indicates that the informer was not paid on a contingent basis. Moreover, while Small's version of the facts, if true, might suggest a different result, Judge Bryan was certainly entitled to believe the agents and the informer, rather than Small. On that basis, the undisputed facts would be that the government used a narcotics addict as an informer, that he "made" about five cases for the Bureau of Narcotics in the year prior to the incidents with Small, that he was paid by the Bureau although he did not "have to turn in information to get money," and that he turned in a lifelong friend here and, in another case, his sister's "boy friend." While this does not present a pretty picture, we are not prepared to rule as a matter of law that these facts require Small's release. Accordingly, we may leave for another day the knotty problems posed by an attempt to put limits on the use of an informer by those who fight the ugly business of peddling narcotics—whether by expansion or change in the doctrine of entrapment as presently developed or by other methods.[5]

There being no error in the trial below, the judgment is affirmed. The court wishes to express to Sherman J. Saxl its gratitude for his conscientious handling of this appeal.

---

3. In *Ramsey,* the court was apparently most moved by the failure of the informer to appear at trial. Cf. United States v. Costner, 359 F.2d 969, 971–973 (6th Cir. 1966).

4. Williamson v. United States, 311 F.2d 441, 445 (5th Cir. 1962) (concurring opinion). The agreement with the informer was to pay $200 to "catch" one defendant and $100 for the other.

5. E. g., in an appropriate case, by striking an informer's testimony if relied on by the government.