**UNITED STATES of America,**
**Appellee,**

v.

**James HENRY, Appellant.**

**No. 138, Docket 32181.**

United States Court of Appeals
Second Circuit.

Argued Sept. 17, 1969.
Decided Oct. 10, 1969.

Paul Paksarian, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for appellant.

Allan A. Tuttle, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, Elkan Abramowitz, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

On April 4, 1967, Federal Narcotics Agent Jack R. Peterson accompanied an informer known as Red Ike to the White Rose Bar on West 125th Street and Broadway in New York City. Inside the Bar he was introduced by the informer to James Henry, the appellant, who was there by prearrangement to meet with Agent Peterson. The agent was posing as a customer for heroin from New Jersey. Some dickering ensued, after which appellant gave Peterson three bundles containing a total of 74 envelopes of heroin in exchange for $270. The events preceding this transaction form the basis for the important question on appeal.

Defendant Henry took the stand and testified to the following series of occurrences. He woke up in the early afternoon of April 4th, suffering withdrawal symptoms from his heroin habit, which had not been satisfied for some 17 hours. Going to the corner of Lenox Avenue and 126th Street, he met his friend Brimstone, a seller of narcotics. He told Brimstone that he was "sick" and needed a couple of "bags" of heroin, but that he had no money. Brimstone told appellant that he was in a hurry, and that he had no heroin at the time. During this conversation, the two were approached by Red Ike. Ike told Brimstone that he had a customer from Paterson, New Jersey, who wanted three bundles of heroin. Brimstone stated that he had some other urgent business to attend to, then turned to Henry and offered him the drugs he had requested if he, Henry, would make the delivery to Red Ike's customer. Henry testified that his response was an unhesitating, "I will." He thereafter accompanied Red Ike to the White Rose

Bar, where the fateful rendezvous with Agent Peterson took place.

Henry's story was contradicted by the testimony of the informer, Red Ike. No other evidence touching on the events preceding the sale was introduced.

Appellant was arrested in August, 1967, four months after the alleged sale, and indicted in one count for the unlawful sale of 12.5 grams of heroin. He now contends that his testimony presented an issue of entrapment for the jury, charging error in the trial court's refusal to charge the jury on that question. He also charges error in the refusal of his request to instruct the jury that he should be acquitted if the jury found the Government's conduct shocking, offensive or unfair. Further error is based on the four-month delay in arrest, which appellant asserts was prejudicial to his defense. Finally, appellant contends that the trial court erred in refusing to give a cautionary instruction to the jury regarding the credibility of the informer and his interest in the outcome of the case.

## I.

Appellant's principal defense at trial was an attempt to demonstrate the absence of any capacity to form a criminal intent for which he could be held responsible in the sale of narcotics. The absence of capacity was alleged to be due to pharmacological coercion as a result of the withdrawal syndrome Henry was purportedly suffering at the time of the solicitation by Red Ike and the subsequent transaction with Agent Peterson. Expert medical opinion evidence was presented on both sides of the mental in-

capacity issue, and the jury apparently rejected the defense of "insanity." [1]

The pharmacological evidence is again raised by appellant to discountenance the evidence of his propensity, which otherwise might appear to have existed at the time of the solicitation by Red Ike, to sell narcotics without hesitation when the opportunity arose.

Courts in this Circuit since 1952 have consistently treated the defense of entrapment under the two-element formulation propounded by Judge Learned Hand in the first appeal in United States v. Sherman, 200 F.2d 880, 882 (2d Cir. 1952):

"Two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it."

Judge Hand's opinion defines "inducement" as including "soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged." *Id.* at 883. Thus the defendant's burden of introducing an issue of fact regarding the "inducement" by a Government agent or informer is relatively slight. On the other hand, the Government's burden to show justification for the inducement, through the defendant's propensity to commit the crime when the opportunity is thus made available, is more difficult. Where an issue of fact is presented regarding the existence of an inducement, "the production of any evidence negating propensity, whether in cross-examination

1. The term "insanity" or "criminal insanity" as a defense to a criminal prosecution is used frequently to connote a mental state in which the accused lacks or lacked "sufficient capacity and will to be held responsible for the criminality of his acts." United States v. Freeman, 357 F.2d 606, 608 (2d Cir. 1966). The defense was referred to in a variety of terms in the briefs and argument on this appeal. This Court generally has sought to avoid use of the word "insanity" as ambiguous and misleading, preferring instead the more precise terminology of the test stated in Section 4.01 of the Model Penal Code. See United States v. Freeman, *supra*, at 622. The term "insanity defense" is thus used in this opinion only as a shorthand reference to the defense presented by appellant at trial, which is not an issue on this appeal.

or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be." United States v. Riley, 363 F.2d 955, 959 (2d Cir. 1966) (per Friendly, C. J.). However, "even when inducement has been shown, submission to the jury is not required if uncontradicted proof has established that the accused was 'ready and willing without persuasion' and to have been 'awaiting any propitious opportunity to commit the offence.'" *Id.*

■ As evidence of Henry's predisposition to engage in a sale of narcotics, the Government offered testimony by both Agent Peterson and the informer that he had previously offered to arrange sales of heroin. Moreover, the defendant's own testimony clearly demonstrated his willingness, without persuasion by the informer or by Brimstone, to undertake the unlawful transaction for which he was indicted. When asked by Brimstone if he would make the delivery solicited by the informer, Henry admittedly responded without hesitation, "I will."

Appellant does not urge, on the record, any contradiction of the factual evidence of his readiness and willingness to enter into the unlawful transaction. He does not contend that any persuasion was exerted by the Government through its informer, but rather that persuasion rising to the level of compulsion to acquiesce in the proposed unlawful sale was exerted on the defendant by the circumstances of his drug addiction and withdrawal conditions. Thus, it is argued, he was not responsible for his submission to temptation, and proof of his unhesitating acquiescence, although uncontradicted, was not probative as a matter of law of a propensity to commit the crime with which he was charged.

■ We cannot accept this argument. The appellant has confused the requirement of proof of propensity to commit a crime with the requirement of criminal intent as a distinct and necessary element of the crime itself. The "insanity" defense was offered to negate the re-

quired element of specific criminal intent by purporting to show that defendant was not capable, because of his physical and psychological condition, of forming the necessary criminal intent. If his conduct was the product of a mental disease or defect, it was not the product of criminal intent as the law requires. See United States v. Freeman, 357 F.2d 606 (2d Cir. 1966).

On the other hand, to overcome the Government's proof of propensity to commit the crime for purposes of the entrapment defense, some evidence must tend to show that the defendant was *not* ready and willing to commit the crime when the solicitation was advanced, or that a contrary disposition to hesitate was overcome by the Government's persuasion. Appellant does not, by his evidence of pharmacological coercion, contradict the fact of his readiness and willingness, he merely offers an explanation for it.

■ The evidence of mental incapacity was properly submitted to the jury for its determination on the question of criminal responsibility for the crime itself; as noted earlier, the jury rejected it. Thus the situation here is somewhat analogous to the one we faced in United States v. Alford, 373 F.2d 508 (2d Cir. 1967). Alford's principal defense was that he had no knowledge that he was committing the crime with which he was charged. His second defense, and the one raised on appeal, was that the Government entrapped him into committing the acts constituting the criminal offense. Evidence on trial showed that Alford readily committed the acts in question. Alford's testimony indicated that he was not aware that the paper bags he willingly delivered to an undercover agent contained narcotics. In disposing of the contention that Alford's story was evidence negating propensity, we said:

"* * * the context of the *Riley* opinion makes clear that when we spoke of lack of contradiction and of negation, we referred not to a denial of an element which the statute requires for commission of the offense but to evi-

dence that would raise the issue of the defendant's lack of willingness and readiness and thus tend to show the act to have been 'the product of the creative activity' of Government officials. Sorrells v. United States, supra, 287 U.S. at 451, 53 S.Ct. at 216 [77 L. Ed. 413] (1932)." United States v. Alford, *supra*, at 508.

 Here the evidence of compulsion arising from narcotics addiction did not raise an issue of appellant's lack of willingness and readiness; rather it brought into question the existence of the requisite criminal intent which was an element of the crime. If the jury believed the Government, Henry was ready and willing to make the sale; if it believed him, he was without capacity to form a criminal intent and therefore committed no crime. Thus, propensity was established without contradiction, and the defense of entrapment was not made out.

## II.

Addiction to, and withdrawal from, narcotics are also the bases of appellant's contention that the trial court erred in refusing to instruct the jury to acquit Henry if they found the Government's conduct "shocking, offensive or unfair" regardless of a finding of predisposition to commit the crime. See United States v. Morrison, 348 F.2d 1003, 1004–1005 (2d Cir. 1965). Appellant charges that the Government took advantage of his condition, or illness, to tempt his participation in the unlawful transaction, and that such conduct by the Government is sufficiently unfair in itself to make out the defense of entrapment.

To meet this contention, we may consider additional facts alleged in Henry's version of the solicitation by Red Ike. He testified that the informer approached Brimstone and himself while they were engaged in conversation on the street corner. The informer addressed himself to Brimstone, not Henry, saying, "Listen, Brim, I have a customer * * that wants three bundles * * * can you serve him?" Brimstone said he was busy, then turned to appellant and offered him "two or three bags if you make this delivery for me." Thus, according to his own testimony, the informer did not approach appellant Henry initially; instead he first came to Brimstone, thought to be the principal seller. It cannot be inferred from these facts that the Government's informer purposely sought out appellant to take advantage of his afflicted condition, even though appellant testified to his belief that the informer had overheard his plea to Brimstone for drugs on credit. It may be that Henry's condition in part motivated his response to the solicitation, and that the Government allowed the tableau to play itself out, resulting in Henry's arrest and indictment. Nevertheless, absent a clear showing of purpose on the Government's part to take unfair advantage of this weakness, the official conduct here was not sufficiently shocking or offensive to constitute a defense to the commission of the crime charged.

## III.

Appellant claims that he was denied a fair hearing on the "insanity" question, because the four-month delay in arrest deprived him of an opportunity to be medically and psychiatrically examined at a time when his condition of withdrawal could have been convincingly demonstrated. As it was, psychiatric testimony at trial was based solely on an opinion derived from the description of Henry's condition as revealed through testimony during the trial.

 The delay in arrest contention is raised for the first time on this appeal. The defendant was under an "obligation to give prompt notice of prejudice claimed as a result of pre-arrest delay." United States v. Smalls, 363 F.2d 417, 419 (2d Cir. 1966). Since the claim of prejudice was not raised prior to or at the trial, we need not consider the merits of the contention at this late date. United States v. Smalls, supra; D'Ercole v. United States, 361 F.2d 211 (2d Cir. 1966).

## IV.

Defendant's recital of facts pertaining to his entrapment defense was contradicted by the informer, Red Ike. Some of the informer's testimony was also relevant to the defense of "insanity," although in light of the expert opinion evidence given by two psychiatrists, this portion of his testimony could not have been of great significance. In addition, the defense, and not the prosecution, called the informer as a witness.

At the conclusion of the trial, the court charged the jury generally on the credibility of witnesses, calling special attention to the defendant's interest in the outcome of the case and its bearing on his credibility. A request to charge the jury specially on the facts drawing the informer's testimony into question as to its credibility was refused. Appellant claims prejudicial error in the refusal of this request.

In United States v. Masino, 275 F.2d 129 (2d Cir. 1960), this court reversed a conviction in part because the trial judge had refused to charge the jury that the testimony of two Government witnesses, one a paid informer and the other an accomplice to the crime, should be "carefully scrutinized." We noted there, however, that "[w]hether a failure so to charge is error or not depends on the other circumstances of the case." *Id.* at 133. In *Masino* "the government's case depended on [the two Government witnesses] almost entirely and therefore it was error not to instruct the jury substantially as counsel requested, namely that such testimony should be scrutinized with special care." *Id.* That is not the case here. The substance of the Government's case againt Henry rested primarily on the testimony of a federal Narcotics Agent. The informer's testimony spoke principally to the question of entrapment, which we have found to have been properly withheld from the jury.

The insanity defense was adequately presented to the jury through expert psychiatric opinion testimony, and the informer's observations with respect to Henry's condition during the period of the crime, although they contradicted the defendant's own statements regarding his physical and psychological state, could not have had a substantial effect on the jury's deliberations. For these reasons, the refusal to draw special attention to the credibility of the informer was not prejudicial error.

The judgment is affirmed.