UNITED STATES of America,
Appellee,

v.

Frederick WEISER, Defendant-Appellant.

No. 181, Docket 33572.

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1969.

Decided Nov. 13, 1969.

Irving Anolik, New York City, for defendant-appellant.

John R. Wing, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Peter L. Zimroth, and Leonard M. Marks, Asst. U. S. Attys., on the brief), for appellee.

Before F R I E N D L Y, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Frederick Weiser, a former internal revenue agent, appeals from a judgment of conviction on various counts growing out of the alleged bribery of another internal revenue agent. After a six-day trial before Irving Ben Cooper, J., and a jury in the United States District Court for the Southern District of New York, appellant was convicted of conspiring to bribe inspector Harold Wenig (Count 1), 18 U.S.C. § 371; of bribing Wenig (Count 2), 18 U.S.C. § 201(b); of aiding and abetting three other agents in bribing Wenig (Counts 4, 5 and 6), 18 U.S.C. § 201(b); and of failing to report violations of the revenue laws which he knew the other agents were committing (Counts 10, 11 and 12), 26 U.S.C. § 7214(a) (8).[1] Judge Cooper imposed concurrent sentences of 18 months imprisonment on each count. Appellant makes a number of arguments for reversal of his conviction. Finding none of them sufficiently persuasive, we affirm.

### I.

The point appellant presses most insistently is that he was entrapped; this

---

1. Appellant was acquitted on four counts (3, 7, 8 and 9), which also charged on each bribe transaction the payment of a "gratuity," 18 U.S.C. § 201(f).

claim grows out of the unusual facts of the case, to which we turn. Weiser's indictment arose out of an investigation by the Internal Revenue Service into corruption on the part of its own agents. In the course of that undercover inquiry, inspector Wenig assumed the role of a dishonest inspector willing to sell confidential information to internal revenue agents under investigation. In the fall of 1966, defendant Weiser became aware that Sidney Romanoff, a co-worker who was under investigation, was obtaining confidential information from Wenig concerning his own case. At that time, Weiser knew that he himself had been under investigation because a car wash owned by his wife and the wives of two other revenue agents was suspected of being a cover for illicitly received bribe monies. On November 2, 1966, Romanoff told Wenig that Weiser was interested in meeting him to obtain information concerning Weiser's case; it was Romanoff, not Wenig, who first mentioned Weiser. On December 5, Wenig told Romanoff that he had obtained some information for Weiser. Romanoff arranged a meeting on the next day, and told Wenig that Weiser was prepared to pay $100 for the information. As arranged, Wenig met Weiser and Romanoff at Roosevelt Field Shopping Center on Long Island. Romanoff introduced Weiser to Wenig and left them alone together. Weiser then gave Wenig $100 cash; Wenig showed him a Xerox copy of interview questions concerning the car wash investigation. They reviewed the questions and discussed answers designed to get Weiser through the anticipated interview. Weiser agreed to use the code name "Caruso" for contacting Wenig at his office. They met for a second time on December 13 to discuss "new information" which Wenig had discovered concerning alleged large cash expenditures by Weiser (for furniture, carpeting, basement improvements and a maid). Weiser assumed that this information was directed at proving wrongdoing on a "net worth" theory. He told Wenig that most of the items

were incorrect, except for a $1,500 cash expenditure for furniture. Weiser said that the investigator would have a difficult time tracing the furniture, and discussed the possibility of claiming that his mother had given him the money on her deathbed. At this same meeting, Wenig mentioned another of Weiser's co-workers who was under investigation, Marvin Kramer. Weiser said that Kramer was a "good boy" and that Wenig ought to help him. On December 15, Weiser called Wenig to tell him that Kramer wanted to get information. At a meeting the next afternoon, Weiser and Wenig discussed in Kramer's absence the information concerning Weiser which had been revealed at the last meeting. Weiser also told Wenig that Kramer had the money ready. Then, in the absence of Weiser, Kramer gave Wenig $100 in cash in exchange for confidential information concerning his case. Weiser later performed similar go-between services for agents Max Kurman and Cesare Viviano. Weiser mentioned them to Wenig, introduced them to him, and they paid Wenig $200 in cash each for information relating to their own cases. Weiser actually was interviewed by the Inspection Service in January 1967; he found the information provided by Wenig to be so useful that he paid him an additional unsolicited $50 in cash following the interview.

## II.

Based upon these facts, appellant argues that he was entrapped as a matter of law. Entrapment occurs when the Government induces the commission of an offense and the defendant was not "ready and willing without persuasion" to commit it and was not merely "awaiting any propitious opportunity" to do so. See United States v. Sherman, 200 F.2d 880, 882–883 (2d Cir. 1952). The burden is on the accused to prove the first element of the defense which "goes simply to the Government's initiation of the crime and not to the degree of pressure exerted." See United States v. Riley, 363 F.2d 955, 958 (2d Cir. 1966). The

burden of proving the second element— often termed propensity—is on the Government. See, e.g., United States v. Smalls, 363 F.2d 417, 419 (2d Cir. 1966), cert. denied, 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967). Appellant does not argue that the jury was improperly charged on these distinctions. Instead he says that what happened to him was a "classic illustration of premeditated entrapment * * * as a matter of law" and that the trial judge should have so ruled. We do not agree. There is evidence in the record that appellant, not Wenig, made the initial suggestion that he meet with Wenig to find out what "information" the latter might have about appellant. Moreover, even if the original solicitation had come from the Government, Weiser's propensity—indeed eagerness—to commit various crimes was clear. It was Weiser, after all, who clearly initiated the $50 bribe which is the subject of Count 2 of the indictment, and the record supports a finding that Weiser's efforts as go-between were his own idea and, in any event, willingly undertaken. Under those circumstances, the argument that he was entrapped as a matter of law is simply contrary to the record; the issue was one for the jury to determine. Apparently, what appellant is really suggesting is that it was improper or immoral for the Government to allow defendant to pay Wenig, whom he labels a "Judas Goat," for "phony" information. The immorality escapes us. Whether Weiser was truly being investigated by the Service is not the point, although apparently he was. The issue is whether Weiser was himself willing to bribe and to help others to bribe an internal revenue agent if the opportunity arose and, as to this, the jury verdict is conclusive.

■ Appellant also claims that unfortunate personal experiences were then causing him so much emotional strain that he could not resist an offer to relieve his tension, but this goes to the defense of mental illness discussed below. Cf. United States v. Henry, 417 F.2d 267 (2d Cir., 1969). As a final and peripheral argument on the entrapment issue, appellant argues that the court improperly prevented him, on his cross-examination of Wenig, from finding out the name of the "acquaintance" who introduced Wenig to co-conspirator Romanoff. However, the judge did allow inquiry into whether the person was a government agent and into Wenig's "method of operation" generally, the obviously relevant facts for defendant's entrapment argument.

## III.

■ Appellant also argues that compelling him to be examined by a government psychiatrist violated his fifth amendment rights. Early in the trial, Weiser's counsel revealed that defendant would raise mental incapacity as a defense and said that his treating psychiatrist would testify on the issue. A few days later, Judge Cooper granted the Government's request that Weiser be examined by its own psychiatric expert; the examination took place the next day. During the trial, Dr. Edward H. Einhorn, the defendant's psychiatrist, related in detail Weiser's severe personal and family problems at the time of the crimes for which he was tried, as did Weiser himself. Dr. Einhorn gave as his opinion that Weiser could not resist the temptation to commit the crimes, i.e., that he lacked the requisite capacity, under the test of United States v. Freeman, 357 F.2d 606, 622 (2d Cir. 1966), to "conform his conduct to the requirements of law." The government expert, Dr. David Abrahamsen, gave a contrary professional opinion. In returning a guilty verdict, the jury obviously accepted the latter view, an option clearly open to them on the conflicting evidence.

Appellant argues that we should reverse the finding of criminal responsibility, but this borders on the frivolous. The real questions concern the court's order requiring Weiser to submit to a psychiatric examination and allowing Dr. Abrahamsen to testify as to the results of it.

Absent any constitutional infirmity, the district court had the power to order defendant to submit to the examination. In United States v. Driscoll, 399 F.2d 135, 139 (2d Cir. 1968), we said that "a strong case can be made for the existence" of such power, citing, inter alia, United States v. Albright, 388 F.2d 719 (4th Cir. 1968), and Alexander v. United States, 380 F.2d 33 (8th Cir. 1967). In United States v. Baird, 414 F.2d 700, 710 (2d Cir. 1969), that estimate was confirmed, and the district court's power to order a psychiatric examination was justified by the responsibility of the federal courts "to supervise the administration of criminal justice in order to ensure fundamental fairness." On the facts before us, we adhere to that reasoning and agree with the court in Alexander v. United States, *supra*, 380 F.2d at 39, that "It would violate judicial common sense to permit a defendant to invoke the defense of insanity and foreclose the Government from the benefit of a mental examination to meet this issue."

Appellant contends that his fifth amendment rights were violated because of the psychiatric examination ordered by the court. In United States v. Baird, *supra*, 414 F.2d at 708, we held that where, under circumstances similar to those presented here,

> the defendant puts in evidence the opinion testimony of his expert, the Government has the right to have its expert examine the accused and to put in evidence his opinion testimony in rebuttal, and that the exercise of such right by the Government does not infringe the defendant's right against self-incrimination.

In *Baird*, we did emphasize, 414 F.2d at 707–708, that the defendant there had not been examined by the experts for *treatment* prior to commission of the alleged criminal act. Appellant argues that *Baird* is therefore distinguishable since he did go to his psychiatrist for treatment. However, this case could technically be described as similar to *Baird*, since Weiser first visited his psychiatrist after he paid the first bribe to Wenig and at a time when he knew he was under investigation for something. But, in any event, we believe that the distinction is without substance; defendant's fifth amendment rights would be the same whether he saw a psychiatrist before or after he committed the crime. The point is not when defendant consulted his expert, but whether—and on what theory—the testimony of his expert is offered at trial.

*Baird* rested on a theory of estoppel which was made additionally attractive, no doubt, because the defendant did not testify in that case. Thus, we pointed out that defendant there was able to get the effective benefit of testifying without doing so by having his experts testify at length as to what he said to them. Defendant in that case justified the admissibility of such evidence on the theory that such out-of-court declarations were offered "as verbal acts on which the doctors' opinions are based," *id.* at 708, not for their truth; accordingly, we said that the Government had the right to use "the same evidence-admissibility theory" and defendant was "estopped from making an effective objection." *Id.* at 709. In the present case, defendant did testify, but the same theory would still apply to his out-of-court statements made to his own or the Government's expert. Moreover, neither in *Baird* nor in this case was the Government's expert allowed to testify about any statement of defendant relating to his guilt or innocence of the offense charged. Accordingly, under the reasoning of *Baird*, the fifth amendment is not violated by allowing a psychiatrist to testify on the basis of an examination of defendant to which the latter was ordered to submit.

## IV.

Appellant's remaining claims require less extended comment. Objection is made to introduction into evidence of tapes and transcripts of various conversations between Wenig and Weiser

and between Wenig and others obtained by secret electronic devices. That some portions of the tapes were inaudible does not necessarily render the entire conversation inadmissible; that question was for the trial judge to determine in his discretion. United States v. Kaufer, 387 F.2d 17, 19 (2d Cir. 1967). Nor did the fourth or sixth amendments require their exclusion. Lopez v. United States, 373 U.S. 427, 437–40, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Hoffa v. United States, 385 U.S. 293, 309–10, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The great bulk of Wenig's recorded conversations were with defendant, but a few were with Romanoff, Kramer, Kurman and Viviano (none of whom testified) both in and out of defendant's presence. Appellant claims that these should have been excluded under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). However, as to each there was a sufficient showing of a joint venture to which Weiser was a party so that the statements were all admissible as declarations in furtherance thereof. *Bruton*, therefore, is not controlling. See 391 U.S. 128 n.3, 88 S.Ct. 1620. Finally, the absence of a formal conspiracy charge against Kramer, Kurman and Viviano is not dispositive. United States v. Granello, 365 F.2d 990, 995 (2d Cir. 1966), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967).

■ Two other arguments require brief mention. At the end of his summation, the prosecutor referred to Counts 10, 11 and 12 of the indictment:

There is a further violation that you have to consider, ladies and gentlemen, and that is Weiser's failure to report the illegal conduct he was aware of between Kramer, Kurman, Viviano and Wenig, and the regulations about that, so that the government can try and make sure that they have clean people

working for them, people of integrity. So you don't have scandals, so you don't have a water commissioner who is arrested for taking bribes, so you don't have sanitation men out in Queens who are paid off to clean someone's streets and not other streets, in order to have a decent system and a fair system and a good government. There is a reason for those things.

Appellant claims that this was an unfair reference to the case of James L. Marcus, then in the headlines, and to reports of garbage collectors who during the trial had apparently refused to plow a snow-covered street without payment of a bribe. While the remarks objected to might have been better left unsaid, they hardly denied defendant a fair trial. The prosecutor did not call Weiser another Marcus; he said rather that the statute requiring one agent to report wrongdoing by another, 26 U.S.C. § 7214(a) (8), was designed to avoid scandals like the Marcus incident.

■ Finally, appellant's reply brief argues that that statute is unconstitutional because it required Weiser to report activities "which conceivably might have involved himself in a criminal charge," citing Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); and United States v. McCarthy, 298 F.Supp. 561 (S.D.N.Y.1969). Putting to one side the question whether we should decline to consider this argument either because it was not made to the trial court,[2] see United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), or because defendant received concurrent sentences on the other five counts, cf. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969), and United States ex rel. Weems v. Follette, 414 F.2d 417 (2d Cir. 1969), the cases cited are all distinguish-

---

2. Judge Cooper raised this point himself when the requests to charge were being discussed, effectively inviting argument on it; however, defense counsel did not take advantage of the opportunity.

able. We do not believe that they require striking down a statute which does not require a report of the agent's own derelictions, but only those of others.

No other argument of appellant requires discussion. Judgment affirmed.