**UNITED STATES of America,**
**Appellee,**

v.

**Frank LICURSI, Jr., Appellant.**

**No. 1247, Docket 75–1173.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 14, 1975.

Decided Nov. 11, 1975.

Gavin W. Scotti, Asst. U. S. Atty., E. D. N. Y. (David G. Trager, U. S. Atty., Paul B. Bergman, Asst. U. S. Atty., E. D. N. Y., of counsel), for appellee.

Raymond J. Messina, New York City, for appellant.

Before GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Frank Licursi, Jr. challenges his conviction for aiding and abetting one Eugene Caufield in the distribution of 89 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He seeks a reversal of his conviction and a judgment of acquittal claiming, in essence, that the evidence was insufficient to sustain such a conviction. In the alternative he claims that he was denied a fair trial by the district court's refusal to charge the jury with respect to the defense of entrapment. The appellant's argument that the evidence was insufficient to sustain the conviction merits little discussion since the record plainly shows that he participated in the narcotics transaction with great zeal and evidenced considerable interest in its success. The entrapment element of this appeal, however, presents us with the task of determining once more to what extent agents of the government may participate in the solicitation of a narcotics transaction before falling prey to allegations of having induced an innocent victim into the commission of a crime. In this case we find that the record indicates that the defendant did not contradict the evidence of his predisposition to commit the crime. Accordingly, we hold that the district judge committed no reversible error by refusing to allow the jury to consider the entrapment defense, and we affirm the conviction.

Licursi appears, from all that the evidence indicates, to have become aware at an uncertain date that Eugene Caufield, a schoolmate and social friend of some five years' duration, had a source of cocaine available for sale. Licursi responded to Caufield's revelation by saying that he was "not interested." Shortly thereafter, on either April 29 or 30, 1974, Licursi received a telephone call from one John DiJanni, who was acquainted with Licursi through the latter's girl-friend. Unbeknownst to Licursi, DiJanni was at that time under indictment in the District of New Jersey for conspiracy to sell cocaine and was cooperating with the government as an informer. DiJanni asked Licursi if he had any "coke" and Licursi replied that the did not. DiJanni told Licursi that he was seeking the cocaine for a friend, who, also unbeknownst to Licursi, was in fact Joseph Brzostowski, an agent of the Drug Enforcement Administration. The entire conversation lasted no more than five minutes and that part of it which dealt with cocaine amounted to no more than DiJanni's asking whether or not Licursi had any of the drug available.

At Licursi's next regularly scheduled evening school class, either one or two

days after DiJanni's request for cocaine, Licursi informed Caufield of that request. Caufield indicated his desire to consummate the transaction. On Friday of that week, May 3, 1974, DiJanni called Licursi a second time, again asking if Licursi had any cocaine for his friend Joe. On this occasion, Licursi replied that a friend of his [Caufield] had cocaine. During that conversation it was "mutually agreed" that DiJanni would bring his friend Joe to Licursi's apartment in Fairlawn, New Jersey, on Sunday, May 5, 1974. DiJanni also informed Licursi that Joe was interested in buying a quarter pound of cocaine. Licursi related the proposed arrangement to Caufield, who agreed to the Sunday meeting at Licursi's apartment.

On Sunday the pre-arranged meeting took place at Licursi's apartment. Those initially present included Licursi, his girlfriend Jennifer Lisa, Caufield, and his wife Phyllis. At approximately 6:45 p. m., DiJanni and Agent Brzostowski arrived, and Licursi went downstairs from his studio apartment to meet them at the front door. DiJanni introduced Brzostowski to Licursi as "Joe," the "guy interested in buying the cocaine." Upon entering the apartment Brzostowski expressed concern about the number of persons present, to which Licursi responded, "Don't worry about it. Everything's cool. Everyone knows what's going on here." Licursi then introduced Brzostowski to the other members of the party, describing Caufield as "the man with the cocaine connection."

After agreeing that they were ready "to do business," Caufield placed a telephone call, presumably to consummate the deal with his supplier, and Brzostowski began a conversation with Licursi. Brzostowski questioned Licursi concerning the quality of cocaine he would be receiving, to which Licursi replied reassuringly, "Don't worry about it. The cocaine Gene [Caufield] gets you will be of good quality."[1] Upon completion of his telephone call, Caufield informed the group that they had to go. Brzostowski, in Licursi's presence, asked of Caufield, "Where do we have to go? I was under the impression the cocaine would be in New Jersey." To which Caufield replied, "If you want the cocaine you have to come over to Brooklyn. That's the only way it can be done." After further discussion about the matter, the group, with the exception of DiJanni, departed in caravan fashion, enroute to Brooklyn. DiJanni departed from the group's company at this point to attend to personal business. The procession to Brooklyn consisted of Caufield on his motorcycle, Brzostowski in his government undercover vehicle and Licursi, Jennifer Lisa and Phyllis Caufield in Licursi's automobile. On cross-examination Licursi admitted that he knew that Caufield and Brzostowski were going to Brooklyn to get cocaine, but he claimed that his presence was merely the result of his promise to drive Phyllis Caufield, who did not wish to ride on her husband's motorcycle in the cold night weather, to Brooklyn.

Prior to crossing the George Washington Bridge, while in Fort Lee, New Jersey, Brzostowski halted the caravan for a second time and announced to Caufield in the parking lot of a diner that he would not go to Brooklyn, an area unfamiliar to him, carrying such a large sum of money. Caufield acquiesced and told Brzostowski that he thought he could go to Brooklyn, pick up the cocaine and return to the diner by 9:00 p. m. that evening. If he could not do so, he indicated that he would call Brzostowski at the diner by that time and so advise him. Thereupon, Caufield, Licursi and the women left the diner.

True to his word, Caufield called Brzostowski at the diner and informed him that the man with the cocaine would not go to New Jersey. Brzostowski replied that he would still not go to Brooklyn but that he would call Caufield if he changed his mind. Shortly thereafter,

---

1. At the trial, Licursi denied having made any statements to or having any conversation with Brzostowski concerning cocaine.

Brzostowski did call Caufield but reaffirmed his decision not to go to Brooklyn. Caufield became angry and left the phone without hanging up the receiver. At that point, Licursi, who was with Caufield in Brooklyn, took up the conversation with Brzostowski. Licursi stated that everyone there was "paranoid" and "nervous" about the cocaine transaction and did not want to go to New Jersey. He further offered to meet Brzostowski somewhere and escort him to the residence. Brzostowski declined the offer and suggested a compromise meeting in Manhattan. The compromise failed and no agreement was reached. Brzostowski gave Licursi a telephone number at which he could be reached if Caufield changed his mind.

Later that night, Caufield, presumably having gotten the number from Licursi, did in fact call Brzostowski. They agreed to complete the transaction the next day in Brooklyn. For the purposes of this opinion it is sufficient to state that Agent Brzostowski purchased cocaine from Caufield the next day in Brooklyn and that appellant Licursi was not present during the transaction.[2]

### Discussion

We find no merit whatever in Licursi's assertion that the evidence presented by the government was insufficient to sustain his conviction of aiding and abetting Caufield in the sale of cocaine to Agent Brzostowski. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949), *quoting from United States v. Peoni*, 100 F.2d 401, 402 (2 Cir., 1938); *United States v. Manna*, 353 F.2d 191, 192 (2 Cir., 1965), *cert.*

denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966), *rehearing denied*, 385 U.S. 893, 87 S.Ct. 25, 17 L.Ed.2d 126.

The evidence, viewed in the light most favorable to the government, clearly demonstrates that Licursi took an active part in the consummation of Caufield's crime of selling cocaine and that he sought, by his own action, the success of the venture. At each phase of the transaction during which Agent Brzostowski expressed doubts about the deal, Licursi reassured him and coaxed him to go on. Such coaxing and reassuring, together with Licursi's initial introduction of Caufield to DiJanni and Brzostowski, demonstrates clearly a desire on Licursi's part that the crime succeed. Cf. *United States v. Manna, supra.*

The major issue upon this appeal, however, concerns the defense of entrapment. We must examine the propriety of the district court's refusal to charge the jury with respect to that defense, where the only government involvement in the initial stages of the crime was an inquiry or "solicitation" to buy drugs. Licursi claims that because there was no evidence of any prior criminal record or any prior involvement with drug transactions, he was entitled to have the jury decide whether DiJanni's two telephone calls induced him to commit a crime which he otherwise would not have been disposed to commit. Our review of the recent decisions of the Supreme Court and of this Court convince us that the district court's refusal to charge the jury on entrapment was entirely proper.

The question of when the defense of entrapment must be presented to a jury was discussed at length by this Court in *United States v. Riley*, 363 F.2d 955 (2 Cir., 1966). That case reviewed and reaffirmed this Circuit's adherence to the two-element approach to entrapment established by Judge Learned Hand in *United States v. Sherman*, 200 F.2d 880, 882–83 (2 Cir., 1952), in which he sought

2. The record does indicate that at school on the following Tuesday, the day after the transaction had been completed, Caufield told Licursi that the deal had been "settled." Licursi so advised DiJanni several days thereafter.

to explain the early Supreme Court case, *Sorrels v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), stating:

"[T]wo questions of fact arise: (1) did the agent induce the accused to commit the offence [sic.] charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence [sic.]. On the first question the accused has the burden; on the second the prosecution has it."

In *United States v. Riley, supra,* this Court recognized that Judge Hand's bifurcated entrapment test had not resolved the seemingly inconsistent decisions concerning when a defendant has presented a sufficient case to entitle him to get that defense to a jury. Consequently, the Court in *Riley* tried to resolve that question by setting forth what the defendant must show in order to be entitled to a charge on entrapment. It held that the first element, inducement, involved only "the Government's initiation of the crime and not . . . the degree of pressure exerted" upon the defendant. *Id.,* 363 F.2d at 958; *United States v. Pugliese,* 346 F.2d 861, 863 (2 Cir., 1965); *Cf. United States v. Jones,* 360 F.2d 92, 96 (2 Cir., 1966), *cert. denied,* 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967). Adhering to Judge Hand's definition of "inducement," contained in *Sherman, supra,* 200 F.2d at 883, that it included "soliciting, proposing, initiating, broaching or suggesting the commission of the offence [sic.] charged," this Court later held in *United States v. Henry,* 417 F.2d 267, 269 (2 Cir., 1969), *cert. denied,* 397 U.S. 953, 90 S.Ct. 980, 25 L.Ed.2d 136 (1970), that the defendant's burden in showing "inducement" by a government agent or informer is "relatively slight." *Cf. United States v. Viviano,* 437 F.2d 295, 299 (2 Cir., 1971), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149; *United*

*States v. Weiser,* 428 F.2d 932, 934 (2 Cir., 1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).

■ It is clear that in the instant case the government informer, DiJanni, "solicited" the commission of the crime charged. Even if we assume that the appellant has shown that he was "induced," *but see United States v. Barash,* 412 F.2d 26, 30 (2 Cir., 1969), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82; *United States v. McMillan,* 368 F.2d 810, 812 (2 Cir., 1966), *cert. denied,* 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967); *United States v. Berry,* 362 F.2d 756, 758 (2 Cir., 1966), that showing is not sufficient to make out an entrapment defense. Once the government has introduced evidence that the accused was "ready and willing without persuasion" and was "awaiting any propitious opportunity to commit the offense," the defendant must somehow challenge or contradict that evidence. *United States v. Riley, supra,* 363 F.2d at 959; *See United States v. Wilner,* 523 F.2d 68, 74 (2 Cir., 1975); *United States v. Miley,* 513 F.2d 1191, 1202 (2 Cir., 1975); *United States v. Ramirez,* 482 F.2d 807, 815 (2 Cir., 1973), *cert. denied sub nom., Gomez v. United States,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475; *United States v. Nieves,* 451 F.2d 836, 838 (2 Cir., 1971); *United States v. Henry, supra,* 417 F.2d at 269–70; *United States v. Alford,* 373 F.2d 508, 509 (2 Cir., 1967), *cert. denied,* 387 U.S. 937, 87 S.Ct. 2062, 18 L.Ed.2d 1003.

■ The prosecution must meet its burden of showing, by substantial evidence, that the defendant had a predisposition to commit the offense. *United States v. Greenberg,* 444 F.2d 369, 372 (2 Cir., 1971), *cert. denied,* 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93.[3] In the case before us, Licursi's own testimony, viewed as it must be, in the light most favorable to him in this instance, *United*

---

3. As was noted in that case, 444 F.2d at 372, n. 3, should the entrapment issue be submitted to the jury, the government's burden of show-

ing predisposition raises to the normal burden of proof beyond a reasonable doubt.

*States v. Cohen*, 431 F.2d 830, 832 (2 Cir., 1970); *United States v. Dehar*, 388 F.2d 430, 433 (2 Cir., 1968), rather than contradicting the prosecution, itself substantially demonstrated that he was willing without persuasion to commit the offense. He testified that on the basis of but one inquiry from the government informer concerning a source of cocaine, he went to a known source of that drug and relayed the inquiry. He further testified that the next contact with the government informant produced a mutual agreement that the principals would meet at Licursi's apartment. Such testimony shows an individual who, given the opportunity, readily played his part as an aider and abetter in the commission of the crime. Nowhere in the record is there any evidence that any pressure or persuasion was used by any government representative.

█ Although it is not too clear from his brief, Licursi's essential claim seems to be that his testimony that he had previously never been involved in the sale of narcotics and that there was no evidence that the government agents had reasonable cause to believe that he had been so involved is sufficient to contradict the evidence of his predisposition. That contention was rejected in *United States v. Bishop*, 367 F.2d 806, 810 (2 Cir., 1966), and we see no justifiable reason to accept it here.

This case is unlike *United States v. Anglada*, 524 F.2d 296 (2 Cir., 1975) where the defendant testified about his reluctance to get involved with drugs, and how the government informant spent 45 minutes to an hour trying to convince him to get some drugs for him, until he was finally "convinced." Anglada offered evidence negating propensity. Licursi did not. He did deny on the stand having made certain statements to Agent Brzostowski concerning cocaine.[4] Those denials, however, did not contradict the evidence showing Licursi's propensity to commit the offense. They were directed at contradicting the prosecution's proof that Licursi was guilty of the offense charged. Had the jury believed the defendant, there would have been insufficient evidence to find that he had associated himself with the success of the crime. *Cf. United States v. Henry, supra; United States v. Alford, supra.*[5]

█ Accordingly, since the appellant's testimony did not contradict the evidence that he was predisposed to commit the offense charged, and there was no other evidence negating propensity, he has failed to establish a question of fact with respect to the defense of entrapment. Therefore, the district court properly refused such a charge.

Affirmed.

---

**4.** See *supra*, footnote 1.

**5.** As in *Alford*, because of our holding that the appellant has failed to elicit evidence sufficient to have raised an entrapment defense, we need not decide whether that defense is available in this Circuit to a defendant who claims, perhaps inconsistently, that he is both innocent of the charges and was at the same time entrapped into committing the offense. *See also, United States v. Braver*, 450 F.2d 799, 802, n. 7 (2 Cir., 1971), *cert. denied*, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972).