**UNITED STATES of America, Appellee,**

v.

**Cesare VIVIANO, Defendant-Appellant.**

**No. 299, Docket 35165.**

United States Court of Appeals, Second Circuit.

Argued Nov. 11, 1970.

Decided Jan. 25, 1971.

ANDERSON, Circuit Judge:

On May 24, 1968 Cesare Viviano was indicted for conspiring to violate 18 U. S.C. §§ 201(b) and 201(f) by offering a bribe in the amount of two hundred dollars to an inspector of the Internal Revenue Service in exchange for information from the confidential files of the Inspection Service (Count 1, 18 U.S.C. § 371), and giving a bribe (Count 2, 18 U.S.C. § 201(b)) or, in the alternative, a gratuity (Count 3, 18 U.S.C. § 201(f)) in the amount of fifty dollars to an inspector of the Internal Revenue Service. He was also charged with a violation of 26 U.S.C. § 7214(a) (8) for failure to report known violations of the Revenue Laws (Count 4). The indictment resulted from an investigation by the Internal Revenue Service into allegations of misconduct among IRS employees. Harold Wenig, an inspector with the Internal Security of the Internal Revenue Service, posed as a corrupt inspector willing to sell information from the files of the Service concerning pending investigations of IRS agents suspected of having taken bribes from taxpayers.

In the fall of 1966, Frederick Weiser, an IRS agent working in the Mineola, New York district, discovered that he was under investigation. Sidney Romanoff, a fellow agent who was also under investigation and was obtaining confidential information from Wenig concerning his case, arranged for Weiser to receive like consideration. After his initial contact with Wenig, Weiser performed go-between services for other agents, arranging for them to meet with and purchase information from Wenig.[1]

In March 1967, at the request of Wenig, Sidney Romanoff contacted Weiser

Myron J. Greene, New York City (Howard R. Udell, New York City, on the brief), for appellant.

Arthur A. Munisteri, Asst. U. S. Atty., S. D. N. Y. (Whitney North Seymour, Jr., U. S. Atty., and Jack Kaplan, Asst. U. S. Atty., S. D. N. Y., on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

---

1. Frederick Weiser, Viviano's co-conspirator, was convicted in the Southern District of New York of conspiring to bribe, bribing and aiding and abetting three other agents in bribing Inspector Wenig and of failing to report violations of the revenue laws which he knew other agents were committing. That conviction was affirmed by this court on November 13, 1969. United States v. Weiser, 428 F. 2d 932 (2 Cir. 1969).

Sidney Romanoff is under indictment for his activities, but no action had been taken on his indictment at the time of Viviano's trial.

and informed him that an investigation was being conducted into the prior audits of Cesare Viviano, an IRS agent working in the same group with Weiser, and that Wenig possessed information that might prove helpful to Viviano. Thereupon Weiser arranged a meeting between Viviano and Wenig for March 21, 1967. Viviano was instructed by Weiser to give Wenig $200 for the information. On the agreed date Viviano, accompanied by Weiser, met Wenig at the Roosevelt Field Shopping Center in Westbury, Long Island. Both entered Wenig's car, but Weiser, after having conversed with Wenig about his own case, left. Wenig, in conferring with Viviano, showed him some records of the information gathered by the IRS in its investigation of his prior audits. Viviano admitted having taken a bribe on several cases, but he could not remember others. Wenig and Viviano exchanged phone numbers, Wenig assigned Viviano a code name, "Victor," and Viviano gave $200 to Wenig. During the meeting Wenig was equipped with a Kel transmitter, and the car was outfitted with various other electronic devices. In a nearby car, four other inspectors recorded the entire conversation.

On March 30 and April 4, 1967 Wenig and Viviano talked by phone; during the first call, Wenig related that one of Viviano's audits was going to be evaluated by the audit staff, and during the second, another meeting was arranged for April 5 at Roosevelt Field. Both conversations were recorded. At the April 5 meeting, Wenig showed Viviano more information about the investigation and Viviano agreed to a plan whereby, in the future, whenever Wenig possessed information regarding planned investigations of Viviano's audits, he would call Viviano, and, if he had taken a bribe, Viviano would tell Wenig to conduct the interview of the taxpayer alone; if no bribe had been taken, he would tell Wenig to take a partner. Again, Wenig was equipped with a Kel transmitter, and the conversation was recorded. On April 18 and 19, 1967

Wenig and Viviano spoke on the phone, and Viviano indicated that certain audits were "okay." These conversations were also recorded. Their next conversation occurred on December 11, 1967, and at that time Viviano revealed further information about an audit, currently being investigated, for which he had admitted taking a bribe. In a December 13 phone conversation, they agreed to meet for lunch later that day. During lunch, Viviano handed Wenig $50 under the table to show his appreciation for what Wenig had done for him. Both phone conversations and the conversation during lunch were recorded.

On July 16, 17, 18, 1970 the trial took place before the district court sitting without a jury; the defendant had waived his right to a jury trial. Harold Wenig and Sidney Romanoff, among others, testified at the trial, and the tapes (and transcripts of the tapes) of the various conversations between Wenig and Viviano were introduced into evidence over the objection of counsel for the defendant. Viviano did not testify in his own behalf. He was found guilty of conspiracy to bribe and of offering a gratuity to Harold Wenig in exchange for confidential information from IRS files. He was acquitted on the other two charges. For the reasons hereinafter stated, we affirm.

 Judge Learned Hand's discussion of the defense of entrapment in United States v. Sherman, 200 F.2d 880, 882 (2 Cir. 1952), provides a standard for testing defendant's claim that the defense of entrapment was established as a matter of law.

"[I]n such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it."

As the district court found that Viviano was induced to offer the bribe and gratuity[2] and the Government raises no question as to this finding on appeal, the sole question presented is whether there is sufficient evidence in the record upon which the trial judge could base a finding that the defendant possessed a propensity to offer a bribe and gratuity to Wenig.

Once the defendant demonstrates inducement, the Government may prove propensity by showing (1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement. See Sherman v. United States, *supra*, 200 F.2d at 882; United States v. Becker, 62 F.2d 1007, 1008 (2 Cir. 1933). Although lacking in evidence of the second category, the record provides ample support for the finding of propensity based on the other two kinds of evidence. Viviano's admissions of having accepted bribes from taxpayers support

a finding of his past commission of similar criminal activity and show his awareness of his vulnerability and the strong motive that was his to seize the opportunity to conceal his past misconduct from the authorities.[3] Moreover, any revulsion which may attach to the use of inducement by the police is in good measure nullified here by the fact that the accused was largely "hoist with his own petard."[4] There is no evidence whatsoever to suggest that Viviano displayed the slightest hesitancy in taking advantage of the solicitation. United States v. Henry, 417 F.2d 267 (2 Cir. 1969), cert. denied, 397 U.S. 953, 90 S. Ct. 980, 25 L.Ed.2d 136 (1970).

Appellant contends that his admission to the acceptance of bribes from taxpayers is the only evidence tending to support a finding of propensity and that such evidence was improperly admitted in violation of the Fourth Amendment because the interception of his conversations with Wenig was an illegal seizure, and because Wenig failed to give appellant the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in violation of his Fifth and Sixth Amendment rights.

2. The "element [of inducement] goes simply to the Government's initiation of the crime and not to the degree of pressure exerted. * * * *" United States v. Riley, 363 F.2d 955, 958 (2 Cir. 1966); see also United States v. Dehar, 388 F.2d 430, 433 (2 Cir. 1968); Sherman v. United States, 200 F.2d at 883. The degree of pressure is properly considered under the element of propensity, as it has direct bearing on the accused's willingness to respond to the inducement of the agent. Cf. Kadis v. United States, 373 F.2d 370, 373 (1 Cir. 1967).

3. There is no requirement that the evidence of prior criminal conduct be formally the same as the crime charged. It has been said that it is enough that the prior conduct be "morally indistinguishable" from the crime charged and "of the same kind." United States v. Becker, *supra*, at 1009; United States v. Sherman, 200 F.2d at 882.

4. In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932),

and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), a majority of the Supreme Court felt that the defense of entrapment was theoretically based in the diminished guilt of the defendant, while the minority thought it based in the power of the federal courts to regulate police conduct which was likely to give rise to a miscarriage of justice. See United States v. Becker, *supra*, 62 F.2d at 1009. In Kadis v. United States, *supra*, 373 F.2d at 373, the First Circuit suggested what appears to be a reasonable explanation of the practical relationship between concern for high-handed police tactics and the feeling that entrapment diminishes guilt.
"Extreme police tactics, for example, of badgering, or making massive appeals to the sympathy of an obviously reluctant person, will mean that as a matter of law the government cannot be found to have sustained its burden of proving that it did not corrupt an innocent or unwilling man."

It is evident, however, that the district court relied on Viviano's spontaneous and unquestioning response to the opportunity to receive the information—conduct which implied the assumption of his own guilt, United States v. Masciale, 236 F.2d 601, 603 n. 1 (2 Cir. 1956) aff'd, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958)—in addition to its reliance on the evidence of the taped conversations.[5] But, even if the only evidence supporting propensity were the intercepted admissions of taking bribes in the past, that evidence was properly before the court and was sufficient to support the conviction.

■■ Appellant's Fourth Amendment claim is foreclosed by our decision in United States v. Kaufer, 406 F.2d 550 (2 Cir.) aff'd, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969), where we held that it was not a violation of the Fourth Amendment to utilize tape recordings of the defendant's conversations obtained with the consent of a party to the conversation. We recently reaffirmed the *Kaufer* decision in United States v. DiLorenzo, 429 F.2d 216 (2 Cir. 1970), and we adhere to the position announced in those decisions[6] on

this appeal, which presents the identical question.[7]

Appellant claims that he was deprived of his Fifth and Sixth Amendment rights because he was not warned of his right to remain silent and to the assistance of counsel pursuant to Miranda v. Arizona, *supra*, prior to being interrogated by Wenig, and that Wenig's testimony and the tape recordings, therefore, should have been excluded. Assuming, however, that Wenig's conversations with the appellant constituted "interrogation," United States v. DiLorenzo, *supra*, at 219, the circumstances did not call for *Miranda* warnings.

■ The purpose of the *Miranda* requirement is to protect a suspect, detained by the police, from coercion effected by the police to compel the suspect to make inculpatory admissions or confessions.[8] We have therefore consistently examined each situation presented to determine "whether [the facts disclose] the inherently compulsive aspects which the Supreme Court found to exist in the process of custodial interrogation. * * *" United States v. Caiello, 420 F.2d 471, 473 (2 Cir. 1969), cert. denied, 397 U.S. 1039, 90 S.Ct.

5. As the trier of fact, the district judge stated:
 "I find no entrapment because of the defendant's willingness, and indeed, eagerness, to make the payments * * * and to enlist Inspector Wenig's cooperation."

6. In *Kaufer*, we rejected the argument, now urged, that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), overruled *sub silentio*, Lopez v. United States, 373 U.S. 427, 83 S. Ct. 1381, 10 L.Ed.2d 462 (1963). With regard to misplaced expectations of privacy we said, "[t]he risk that an unknown third party will intercept and record the conversation, as was done in *Katz*, is obviously of a far different order [than the risk the bribe offer will be reproduced in court by faultless memory or mechanical device, as in *Lopez*]." 406 F.2d at 551–552. See also United States v. Knohl, *infra*, 379 F.2d 427 at 443. Contra, United States v. White, 405 F.2d 838 (7 Cir.) (*en banc*), certiorari granted,

394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), restored to calendar for reargument, 396 U.S. 1035, 90 S.Ct. 677, 24 L.Ed.2d 679 (1970).

7. That Viviano's admissions were of past criminal conduct rather than statements made during the commission of and in furtherance of a crime, as in *Kaufer*, is not a distinguishing factor, because the Fourth Amendment is concerned with the conduct employed in the interception, not the content of the communication. United States v. DiLorenzo, *supra*, 429 F.2d at 219 n. 2.

8. We do not read Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to suggest that the rationale of *Miranda* rests on grounds other than the coercive effects of custodial interrogation. Hoffa v. United States, 385 U.S. 293, 303–304, 87 S.Ct. 408, 17 L. Ed.2d 374 (1966); United States v. Knohl, *infra*, 379 F.2d at 442; cf. United States v. DiLorenzo, *supra*, 429 F.2d at 219.

1358, 25 L.Ed.2d 650 (1970); see also United States v. White, 417 F.2d 89 (2 Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 910, 25 L.Ed.2d 92 (1970); United States v. Squeri, 398 F.2d 785 (2 Cir. 1968).⁹ While this attests to an underlying policy favoring statements which are the product of free and rational choice, no *per se* rule exists which disqualifies all statements not the product of such choice. It is only when inculpatory statements are made in a context in which rationality and free choice are likely to be overborne by the Government's investigatory or prosecutorial agents or authority that *Miranda* comes into play. See United States v. DiLorenzo, *supra*, 429 F.2d at 219; United States v. Squeri, *supra*, 398 F.2d at 789; United States v. Knohl, 379 F.2d 427, 442 (2 Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

While one may assume that appellant would not have admitted having taken bribes from taxpayers had he been aware of Wenig's true purpose, this does not mean that Viviano should have been given the *Miranda* warnings. He was not in a situation where he was impelled through weariness or fear of further pressure to say what his interrogator wanted him to say or to make inculpatory admissions, whether true or not, to stop the police from badgering him and leave him alone. He was under no police compulsion to meet with Wenig. Once there he was free to say nothing or leave any time he chose. The real inducing cause of his making self-incriminating statements was his eagerness to avail himself of a chance to conceal his past derelictions.

We hold, therefore, that the district court properly admitted the testimony of Harold Wenig and the tape recordings of his conversations with appellant and that it correctly found the Government had met its burden of establishing appellant's propensity to bribe Harold Wenig.

Affirmed.

9. Contrary to appellant's assertions, the Seventh Circuit's decision in United States v. Dickerson, 413 F.2d 1111 (7 Cir. 1969), does not differ from our own approach to *Miranda*. In *Dickerson*, the Seventh Circuit held that IRS agents investigating individual tax returns must give the taxpayer *Miranda* warnings at the first contact with the taxpayer after the investigation has become a criminal investigation, a result contrary to our own in United States v. Squeri, *supra*. Rather than rely on whatever deceit may have been employed by the agents in *Dickerson* as grounds for imposing the *Miranda* warnings, however, the court emphasized and relied upon the adversarial nature of a tax investigation and the inherent coercion exerted on the taxpayer by such investigations, *id.* 413 F.2d at 1116, an evaluation with which we disagree.