·UNITED STATES of America,
Appellee,

v.

Angelo MASCIA, Defendant-Appellant.

No. 989, Docket 71–1278.

United States Court of Appeals,
Second Circuit.

Argued June 11, 1971.
Decided Sept. 8, 1971.

Richard Owen, New York City (Owen & Turchin, New York City, on the brief), for appellant.

Edward M. Shaw, Asst. U. S. Atty. (Jack Kaplan, Asst. U. S. Atty., Whitney North Seymour, Jr., U. S. Atty., for Southern District of New York, on the brief), for appellee.

Before FRIENDLY, Chief Judge, and HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York after a jury trial convicting appellant of paying and conspiracy to pay a bribe to an agent of the Internal Revenue Service in violation of 18 U.S.C. §§ 201 and 371 (1964). The court imposed concurrent sentences of one year and fines of $5000 for each count. We affirm.

In early 1968, the Internal Revenue Service assigned Agent Lawrence Ruggiero to conduct audits of the federal income tax returns of appellant Angelo Mascia, his son John Mascia, and their partnership Alang Metal Company. Later in the same year Ruggiero undertook an assignment as an undercover agent for the IRS Inspection Service in connection with its investigation of William Williams, a corrupt Westchester accountant who was formerly with the IRS. Williams was engaged by the appellant to represent him in connection with IRS audits of his returns. Agent Ruggiero was instructed to pretend to be willing to accept a bribe from Mascia. He regularly reported to the IRS all his conversations with Williams and Mascia.

Williams told Ruggiero that the audits of the Mascias were a potential "gold mine." Expecting to share in the "take," he urged Ruggiero to seek a bribe.

Ruggiero met with appellant Mascia three times. The first meeting of February 28, 1969 was apparently routine. A second meeting took place on September 3, 1969. Williams was not present. The conversation at this meeting is recorded on tape. Mascia complained that in a previous investigation Special Agent Douglas Powell had harassed Mascia and others. Ruggiero stated that Powell had "stirred up mud" and indicated that his own audit would be lengthy and thorough. Mascia protested that he had nothing whatsoever to fear from such an investigation. Ruggiero told Mascia that he could have avoided trouble with Powell had he been represented by Williams. He said that Williams was familiar with

"what is going on inside the Internal Revenue Service" and "knows his way around." Ruggiero said that it was a shame how many people get "shafted by guys like Powell," lose their business, and even go to jail. Mascia ended by telling Ruggiero that the IRS could "take anything you want, take the house, take the apartment, take anything you want to take."

The last meeting, also on tape, took place on September 18, 1969 with Ruggiero, Williams, appellant, and his son John Mascia present. Williams, pursuant to a scheme to threaten Mascia with collateral examinations, opened this meeting by telling him that Ruggiero either could "get rid of this thing or he can start collateral investigation" in Connecticut and Florida. Mascia at first indicated that he would give any information requested. Ruggiero, in order to indicate his willingness to accept a bribe, replied, "Because when they start. OK? It's out of my hands." Ruggiero and Williams proceeded to ask questions concerning Mascia's brokerage accounts, sources of income, sale of a partnership, rental income in New York, and several other items. To this appellant remarked, "They can assess me anything they want." Soon, however, Williams brought the conversation to a head by asking whether Ruggiero could close out the Mascia audits. Ruggiero indicated that he could end the investigation immediately. When Williams asked "Now how many golf balls do we need to play a game?", appellant asked his son John to leave the meeting. Further conversation between Williams and Ruggiero indicated that Ruggiero could arrange for the investigations to be dropped. Appellant interrupted to say, "I'm not accustomed to doing things the way we're doin' 'em * * *" and "[T]his is the first time I would ever do anything like this * * *." At this point appellant removed a roll of currency from a bureau drawer and took Williams aside to another room. Upon their return, Williams whispered "two thousand dollars"

to Ruggiero. After leaving the Mascia's home, Williams delivered $1000 to Ruggiero, and the next day he gave him an additional $500, having kept $500 for himself.

Appellant contends that the proof of predisposition to pay a bribe was insufficient to justify submission of the case to the jury and that the trial court should have found entrapment and directed a verdict of acquittal. We do not agree. Although the evidence as to the appellant's state of mind was conflicting, there was sufficient evidence to support the jury's conclusion that appellant Mascia was ready and willing to bribe Agent Ruggiero and that his posture of innocence was play acting. For example, the jury had before it on the tape of the September 18 meeting appellant Mascia's statement that "If I spend twenty I file for twenty-five." On the basis of such evidence it could properly have concluded that if Mascia boasted of being prepared to falsify his income tax returns he might also be willing to bribe a revenue agent. See United States v. Sherman, 200 F.2d 880, 882 (2d Cir. 1952), aff'd after remand in 240 F.2d 949 (2d Cir. 1957), rev'd on other grounds, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); United States v. Becker, 62 F. 2d 1007, 1008–1009 (2d Cir. 1933); see also United States v. Viviano, 437 F.2d 295, ftn. 3 at 299 (2d Cir. 1971).

At another point the appellant said, "I'm in the street * * *. Wherever I can rob. Put it that way. Wherever I can steal it." Although appellant contends that he was joking, the jury was entitled to consider these words as further proof that his claims of innocence were a ruse.

The government introduced proof which the jury could have taken to show that Mascia's apparent reluctance to bribe Ruggiero until late in the meeting of September 18 was based upon his hope that a bribe previously paid to an IRS agent by his Connecticut business partner would also serve to protect him, Mascia, from an additional tax assessment.

**1114**

█ The judge's charge on the entrapment issue and as to the government's heavy burden to establish predisposition was unexceptionable. In the light of that charge the jury's finding is clearly supportable.

█ Appellant contends, however, that regardless of the question of predisposition, the government's conduct during the investigation was so offensive and unconscionable as to require acquittal as a matter of law. In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the Supreme Court rejected the view that an entrapment defense is directed to police misconduct rather than to the diminished guilt of the defendant. See also, Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932). As to this issue this court said in United States v. Smalls, 363 F.2d 417, 419–420 (2d Cir. 1966) that "we are, of course, bound by Sorrells and Sherman." See also United States v. Viviano, 437 F.2d 295, 299, ftn. 4 (2d Cir. 1971).

Affirmed.