UNITED STATES of America, Appellee,

v.

Joseph R. SILVESTRI,
Defendant-Appellant.

No. 1382, Docket 83–1068.

United States Court of Appeals,
Second Circuit.

Argued July 13, 1983.

Decided Oct. 7, 1983.

John J. Barry, Newark, N.J. (Alfred C. De Cotiis, George C. Frino, and De Cotiis & Phillips, West Orange, N.J., on brief), for defendant-appellant.

Lawrence H. Sharf, Sp. Counsel, Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., Edward A. McDonald, Atty.-in-Charge, Organized Crime Strike Force, Brooklyn, N.Y., on brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and MALETZ, Senior Judge.*

NEWMAN, Circuit Judge:

Joseph R. Silvestri appeals from a January 28, 1983, judgment of the District Court for the Eastern District of New York (Jack B. Weinstein, Chief Judge) convicting him after a jury trial of bribery and related charges arising out of the Abscam investigation. For the reasons that follow we affirm.

## I.

Silvestri, a New Jersey businessman, was originally indicted along with former Congressmen Frank Thompson, Jr. and John M. Murphy and Philadelphia attorney Howard

---

* The Honorable Herbert N. Maletz of the United States Court of International Trade, sitting by designation.

L. Criden. The charges against Silvestri and Criden were severed by agreement, Thompson and Murphy were tried and convicted, and we affirmed their convictions, *United States v. Myers*, 692 F.2d 823 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983). Thereafter Silvestri was charged in a superseding indictment. Count One repeated the conspiracy count of the original indictment, charging that Silvestri conspired with Thompson, Murphy, and Criden, in violation of 18 U.S.C. § 371 (1976), (a) to defraud the United States of, among other things, the right to the honest services of the Congressmen and (b) to commit substantive offenses in violation of 18 U.S.C. §§ 201(b) (bribery) and 201(g) (unlawful gratuity) (1976). Among the overt acts alleged were Thompson's receipt of a $50,000 bribe payment on October 9, 1979, and Murphy's receipt of a $50,000 bribe payment on October 20, 1979. The superseding indictment added two substantive charges arising out of an unsuccessful attempt to bribe Congressman Edward J. Patten. Count Two charged the offering of a bribe in violation of 18 U.S.C. §§ 201(b) and 2 (1976), and Count Three charged interstate travel to promote bribery activity in violation of 18 U.S.C. §§ 1952 and 2 (1976). Silvestri was found guilty on all three counts. He received concurrent terms of three years and consecutive fines of $5,000 on each count.

The background and unfolding of the Abscam investigation are detailed in *United States v. Myers, supra*, 692 F.2d at 829–34. Essentially, an FBI undercover operation known as Abdul Enterprises, Ltd. claimed to have large amounts of money available for investment on behalf of two Arab sheiks. During the summer of 1979, various individuals were attracted by the prospect of obtaining these funds. Undercover operatives then broached the prospect of purchasing the aid of public officials to assist the sheiks in the event that they wished to become permanent residents of the United States. Among the first to agree to locate officials willing to accept corrupt payments were former Camden Mayor Angelo J. Errichetti and Howard Criden. On September 17, 1979, Errichetti introduced FBI informant Melvin Weinberg to Silvestri, who proposed that the sheiks finance a gambling casino in Atlantic City being planned by Cavanaugh Communities Corporation. The project needed financing of $60 million. Four days later Errichetti, Criden, Silvestri, undercover FBI agent Anthony Amoroso, Weinberg, and the two principals of Cavanaugh met to discuss the project. No agreement concerning financing was reached at that time or subsequently. Silvestri claimed to have an agreement with Cavanaugh to earn for his brokerage company a commission of $6 million if the casino project materialized.

On September 27, unbeknownst to Amoroso, Weinberg, or anyone connected with Abscam, Criden recruited Silvestri to locate Congressmen willing to accept bribes in connection with the sheiks' immigration problems. As Silvestri later told Weinberg in a recorded conversation:

[Criden] said, "you want to make some walking around money, cash?" I said, yeah, I got a good business, but everybody likes cash. I pay too friggin much taxes.... He says any congressman you send us, you get 15 grand, and you give the congressman whatever you want to give him, two grand, five grand, ten, whatever. You keep a few bucks for yourself.

The next day Silvestri contacted the office of New Jersey Congressman James Howard. Ultimately Silvestri arranged a meeting for October 2 with Congressman Howard after explaining to Howard's long-time friend and part-time aide, Jerry West, that the sheiks would "reciprocate" for the Congressman's help with a $5,000 campaign contribution. At the meeting West passed a note to the Congressman informing him of the $5,000, at which point the Congressman stopped the meeting.

Undaunted by Howard's rejection, Silvestri then conveyed the sheiks' proposition to his friend, Congressman Thompson, at a meeting on October 4. Criden, who attended the meeting, later informed Weinberg that Thompson was agreeable. This led to

the October 9 meeting between Amoroso, Weinberg, Thompson, and Criden at which Amoroso transferred to Criden a briefcase containing $50,000. *See United States v. Myers, supra,* 692 F.2d at 832–33. Silvestri later acknowledged, in a recorded conversation, that Criden had paid him $3,500 of the Thompson payment. Silvestri had gained the impression from Criden that the sheiks' payment for each Congressman was $25,-000. In a conversation with Weinberg he later learned that the payment was $50,000, prompting him to complain to Amoroso and Weinberg that Criden had "ripped me off." On October 17 and 18, in conversations with the undercover agents, Silvestri made them aware that Criden had recruited him to locate Congressmen willing to take bribes, and he offered to continue his efforts.

On October 20 a $50,000 payment was transferred to Criden and Congressman Murphy, who had been solicited by Thompson. *See id.* at 833. Subsequently Silvestri demanded from Criden a share of the Murphy payment; Criden told him to obtain his share from Thompson.

Meanwhile Silvestri had arranged to bring New Jersey Congressman Edward J. Patten to meet with Amoroso and Weinberg at the Hilton Inn at Kennedy Airport on October 20, right after the agents had met there with Murphy. In a recorded conversation the day before the meeting, Weinberg told Silvestri, "I'll have the 50 for Patten and we'll do him Saturday [October 20]." At the October 20 meeting, which was videotaped, Amoroso put the bribe proposition to Patten in explicit terms, mentioning the $50,000 figure and the purpose for offering it. Silvestri urged Patten to be helpful to the sheiks and clearly indicated his awareness of the proposed transaction. When the Congressman suggested that an alien with special skills might secure admission to the United States, Silvestri replied, "Ed our men don't have any

skill, they only have money." Congressman Patten refused to accept a bribe, prompting Silvestri to say at the end of the meeting that he had "[w]asted the whole frigging afternoon. Could have been fishing. Would have been better off."

When arrested on February 2, 1980, Silvestri, after learning that Amoroso and Weinberg were undercover agents, acknowledged his role in the conspiracy. He specifically admitted that he received $3,500 from the Thompson bribe and that he knew, prior to the October 20 meeting with Congressman Patten, that Patten would be offered a bribe. He offered no explanation for his criminal conduct.

At trial Silvestri presented no witnesses. Through counsel he argued to the jury that his conduct had not constituted a violation of law and, alternatively, that if it had, he had been entrapped by the inducement of obtaining a $6 million commission on the Cavanaugh casino project.[1] Chief Judge Weinstein expressed the view that the evidence did not even create a jury issue as to entrapment, *see United States v. Licursi,* 525 F.2d 1164 (2d Cir.1975); *United States v. Miley,* 513 F.2d 1191 (2d Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 75, 46 L.Ed.2d 62 (1975); *United States v. Riley,* 363 F.2d 955 (2d Cir.1966), but out of "caution" decided to submit the entrapment defense to the jury, which obviously rejected it.

## II.

Silvestri's principal claims on appeal concern his defense of entrapment. He bases his claims on the following view of the facts: the Government, acting through its undercover operatives, FBI Agent Amoroso and Weinberg, lured Silvestri with the prospect of financing for the Cavanaugh casino project, a deal from which Silvestri anticipated a $6 million commission; the Government operatives led Silvestri to be-

---

1. Alternative arguments were permissible since Silvestri did not take the witness stand to deny participation in the crimes alleged nor introduce any evidence that he was not involved, and since he had alerted the Government in his counsel's opening statement that he would both challenge the evidence of guilt and claim entrapment. *See United States v. Valencia,* 645 F.2d 1158, 1170–72 (2d Cir.1980) (amended 1981); *see also United States v. Mayo,* 705 F.2d 62, 71–73 (2d Cir.1983).

lieve that Criden was their agent; Criden then enlisted Silvestri to help locate Congressmen willing to take bribes to assist the sheiks; Silvestri made his overtures to Congressmen Howard, Thompson, and Patten induced by the prospect of a $6 million commission and anxious to earn the good will of the sheiks whose financing was crucial to earning his commission. From this version of the events, Silvestri claims that the Government engaged in outrageous conduct in violation of the Due Process Clause, that the jury instruction on entrapment was erroneous for failure to charge that "in terms of entrapment" Criden must be considered a Government agent, and that the evidence established entrapment as a matter of law.

All of these claims fail for the fundamental reason that no agent of the Government and no one acting on the Government's behalf ever suggested to Silvestri that a condition for earning a commission on the casino project was his willingness to participate in the bribing of Congressmen. Until October 17, 1979, no agent of the Government even knew that Silvestri was in a position to locate willing Congressmen, much less suggested to him that he do so. Criden enlisted Silvestri into the bribery conspiracy and did so without the Government's knowledge. When Silvestri's role became known to the Government operatives on October 17, they simply invited him to continue locating willing Congressmen, without offering any inducement, other than whatever nominal share of the bribe payments Silvestri was able to obtain from Criden.

The Government agents did nothing that implicates either the fairness standards of the Due Process Clause or the inducement component of the entrapment defense simply by leading Silvestri to believe that Abdul Enterprises, Ltd. had substantial sums of money available for financing various projects including a casino. If Silvestri came to the conclusion that he would ingratiate himself with the sheiks by committing crimes from which they would benefit, that explanation of a motive on his part does not become inducement on the part of the Government. The prospect of financial gain is not an inducement, for purposes of due process or entrapment, unless Government agents, or someone acting on their behalf, urges the commission of a crime and expressly or at least impliedly conditions the receipt of the financial benefit upon the defendant's criminal participation. *See United States v. Jannotti,* 673 F.2d 578, 602–03 (3d Cir.) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). That did not occur in this case.[2]

The complete absence of any linking by Government agents of financing for the casino with bribing Congressmen obviates the need to consider under what circumstances an inducement is attributable to the Government when communicated to a defendant by a third party. *See United States v. Myers, supra,* 692 F.2d at 840 n. 13; *United States v. Valencia,* 645 F.2d 1158, 1168–70 (2d Cir.1980) (amended 1981), *reh'g en banc denied,* 669 F.2d 37 (2d Cir. 1981), *aff'd after remand,* 677 F.2d 191 (2d Cir.1982). There is no evidence that Criden told Silvestri that he would have to bribe Congressmen in order to secure financing from the sheiks. Thus, there is neither an "instructed transmission" of an inducement, an "uninstructed transmission" of an inducement, nor a "caused" inducement, the three varieties of third-party entrapment we identified in footnote 13 of the *Myers* opinion. Since Criden conveyed no inducement concerning the casino financing to Silvestri, there was no basis for broadly instructing the jury, as Silvestri requested, that "in terms of entrapment" the Government is responsible for all the "acts and statements of Howard Criden to Joseph Silvestri." Some modified version of Silves-

---

**2.** To the extent that Silvestri predicates his due process claim on the general conduct of the Abscam investigation, we reject the contention for reasons set forth in *United States v. Myers, supra,* 692 F.2d at 836–47, and *United States v.* *Williams,* 705 F.2d 603, 619–622 (2d Cir.1983); *see also United States v. Alexandro,* 675 F.2d 34, 39–42 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982).

582

tri's requested instruction might have been appropriate had Silvestri claimed that Criden, acting at the behest of Government agents, induced him to bribe Congressmen by urging him to do so and by holding out the prospect of a few thousand dollars of "walking around money."[3] But Silvestri made the more extravagant claim, unsupported by the evidence, that Criden was the instrument through which Government agents induced Silvestri to commit crimes in order to obtain financing for the casino and a resulting commission.[4] Since the requested instruction, as presented, was inappropriate, it was not error to omit it.

There is no merit to the claim that the evidence established entrapment as a matter of law. That claim, properly understood, arises only when evidence is insufficient to permit a reasonable jury to find that a defendant's predisposition has been established beyond a reasonable doubt. *See United States v. Myers, supra,* 692 F.2d at 836 n. 8. Here, the evidence of Silvestri's prompt and unhesitating acceptance of Criden's invitation to join the bribery conspiracy and his eager pursuit of its objectives overwhelmingly established his predisposition. *See United States v. Viviano,* 437 F.2d 295, 299 (2d Cir.), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971). Indeed, as Chief Judge Weinstein noted, the evidence hardly sufficed even to put Silvestri's predisposition in issue.

### III.

■ Silvestri's remaining claims require little discussion. He contends that his conviction on Count Two, the substantive offense involving the unsuccessful bribe of-fer to Congressman Patten, is defective because only an undercover agent and not the defendant specifically communicated a bribe offer to the Congressman. However, the videotape of the meeting with Congressman Patten shows Silvestri actively encouraging the Congressman to accept Amoroso's corrupt proposal, conduct sufficient to make Silvestri liable as one who "directly or indirectly, corruptly . . . offers . . . anything of value to any public official . . . ." 18 U.S.C. § 201(b) (1976). Nor was it error to instruct the jury that Silvestri would not be absolved from liability simply because the actual offer of money was made by Government undercover agents. The evidence in this case permitted the jury to find Silvestri liable either as a principal for his role in urging Patten to accept the bribe, or as an aider and abettor under 18 U.S.C. § 2 (1976). *See United States v. Ordner,* 554 F.2d 24, 29 (2d Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

■ Silvestri challenges the sufficiency of the evidence of venue with respect to Count One, the conspiracy count. Venue in the Eastern District of New York was adequately established by the occurrence there of the overt act in which Murphy received a $50,000 bribe.[5] Although Silvestri contends there was no evidence linking the Murphy transaction to the conspiracy that Silvestri was charged with joining, his demand for a share of the Murphy bribe payment is sufficient.

■ There is no merit to Silvestri's objection to the admission of "other crimes" evidence, consisting of his receipt of $25,000

---

**3.** In opposing Silvestri's broadly worded jury instruction, the prosecution suggested that, if any charge on third-party entrapment was warranted, it should be limited to Criden's action in transmitting to Silvestri the undercover agents' offer to distribute bribe money. Silvestri did not request an instruction along these lines.

**4.** The evidence failed to show that any Government agent linked the casino financing with the bribes, much less instructed Criden to convey such a proposition. The evidence also failed to indicate that Silvestri was motivated to join the conspiracy by the prospect of obtaining the financing. Neither he nor anyone on his behalf presented evidence of such motivation to the jury; moreover, as the prosecution's evidence showed, he made no such claim when he recounted his criminal involvement to an FBI agent on February 2, 1980.

**5.** The Government took the position at trial, and the jury was accordingly instructed, that the unsuccessful bribe offer to Congressman Patten, which occurred in the Eastern District, was not part of the conspiracy charged in Count One.

intended as a payoff for a New Jersey State Senator. The evidence was properly admitted both as to Silvestri's predisposition, even though this episode occurred after some of the activity with which Silvestri was charged, *see United States v. Jannotti, supra,* 673 F.2d at 605 & n. 14, and to rebut his claim, advanced in counsel's opening statement and through cross-examination, that he never did anything in connection with bribery of public officials.

Equally without merit is defendant's claim that he was entitled to a hearing on his allegation that the addition in the superseding indictment of the substantive offenses concerning the unsuccessful bribe of Congressman Patten constituted vindictive prosecution. The charges were added at the pretrial stage, *see United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and concerned criminal conduct distinct from the conspiracy offense initially charged, *see United States v. Mallah,* 503 F.2d 971, 987–88 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). Silvestri speculates that the charges were added in retaliation for his unsuccessful pretrial motion to dismiss for lack of venue and his unwillingness to accept a plea bargain. No facts were alleged warranting a hearing, especially in light of the prosecutor's representation that the added charges would have been inappropriate in a joint trial of the defendants originally charged, but became appropriate in a trial of Silvestri as a sole defendant. Finally, the District Court properly allowed into evidence Silvestri's February 2, 1980, statement to an F.B.I. agent, given at his home prior to his arrest and preceded by *Miranda* warnings.

The judgment is affirmed.